Donald W. Searles (Cal. Bar No. 135705)
Email: searlesd@sec.gov
David M. Rosen (Cal. Bar No. 150880)
Email: rosend@sec.gov

Attorneys for Applicant
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Lorraine Echavarria, Associate Regional Director
John W. Berry, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>           Applicant,<br><br>   vs.<br><br>ETEK INVESTMENT MANAGEMENT, INC.,<br><br>         Respondent. | Case No.<br><br>**APPLICATION OF THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION FOR AN ORDER UNDER SECTION 21(e)(1) OF THE SECURITIES EXCHANGE ACT OF 1934 ENFORCING COMPLIANCE WITH COMMISSION ORDER AND [PROPOSED] ORDER** |

Plaintiff United States Securities and Exchange Commission (the "Commission" or the "SEC") applies to this Court for an order enforcing compliance by the respondent Etek Investment Management, Inc. ("Etek") with a final Commission order, and in support of this application, states as follows:

## INTRODUCTION

1.     By this Application, the Commission seeks to enforce Etek's compliance with the order entered by the Commission on March 26, 2015 (the "Commission Order"), which, in part, requires Etek to pay a civil penalty of $50,000.  A copy of the Commission Order, together with Etck's Offer of Settlement which the Commission determined to accept, are attached as Exhibits A and B respectively and are incorporated herein by reference.

## JURISDICTION AND VENUE

2.     The jurisdiction of the Court is based upon Sections 21(e)(1) and 27(a) of the Securities and Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78u(e)(1) and 78aa(a).

3.     Venue is based upon Section 27(a) of the Exchange Act, 15 U.S.C. 78aa(a), because some of the act, transactions, commitments and obligations that are described and set forth in the Commission Order and which are sought to be enforced by this Application occurred and are required to occur in the Central District of California.

## PARTIES

4.     The Commission is an agency of the United States Government, with its principal office located at 100 F Street, NW, Washington, D.C. 20549.  The Commission's Los Angeles Regional Office is located at 444 S. Flower Street, Suite 900, Los Angeles, CA 90071.

5.     Etek is a New Jersey corporation, formed in 2008, with its principal place of business in New Jersey.  Etek has never been registered with the Commission as a broker-dealer.

1

## STATEMENT OF FACTS

6.      On March 26, 2015, the Commission entered an Order Instituting Administrative and Cease-and-Desist Proceedings, Making Findings, and Imposing Remedial Sanctions and a Cease-And-Desist Order against Etek and 21other individuals and entities, all of whom had submitted Offers of Settlement, which the Commission determined to accept.   *In the Matter of Global Fixed Income, LLC, et al.*, Admin. Proc. File No. 3-16460.

7.      Those proceedings concerned violations of the broker-dealer registration provisions of the Exchange Act by a trading firm, Global Fixed Income, LLC ("GFI"), its principal Charles Perlitz Kempf ("Kempf"), and 20 other individuals and entities, including Haley, who acted as unregistered broker-dealers (the "Participants").  The Participants allowed GFI to increase its allocations in new issue corporate bonds ("New Issues").  Before each New Issue purchase, GFI transferred money to the Participants' accounts in the Participants' names but on GFI's behalf. Upon purchase of their respective allocations of the New Issues, the Participants transferred their allocations to GFI, which then sold the allocations into the secondary market, typically at a small profit that was divided between GFI and the particular Participant who obtained the allocation.  As GFI's owner, Kempf received all of GFI's net profits.

8.      Between July 2009 and June 2012 ("the Relevant Period"), GFI generally directed the Participants to purchase over $2.5 billion in New Issues on GFI's behalf.  Over the Relevant Period, the Participants also purchased over $2.3 billion in securities on the secondary market ("Secondary Trades") on behalf of GFI. Collectively, over the three-year period, the Participants purchased approximately $4.8 billion in securities for GFI without being registered as broker-dealers.

9.      During the Relevant Period Kevin Gregory Haley ("Haley") owned one-third of Etek.  During the Relevant Period Haley did not hold any securities licenses, and has never been registered with the Commission as a broker-dealer nor been an

2

associated person of a registered broker-dealer.

10.     In 2008, Haley met with Kempf about purchasing securities on behalf of GFI.  Haley formed Etek to trade securities for GFI.  In June 2008, Etek and GFI executed a Profit Splitting Agreement and Guarantee of Payment Agreement.  Under the Profit Splitting Agreement, Etek and GFI split the trading profits 20/80, respectively.

11.     Pursuant to its Participation Agreement, Etek purchased approximately $275 million in New Issues and Secondary Trades on behalf of GFI, for which it received $447,475.64 in compensation.

12.     Based upon its factual findings, the Commission Order concluded that Etek violated Section 15(a)(1) of the Exchange Act, which makes unlawful for any broker or dealer to use the mails or any other means of interstate commerce to "effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security" unless that broker or dealer is registered with the Commission in accordance with Section 15(b) of the Exchange Act.

13.     The Commission Order further concluded that it was in the public interest to impose a cease-and-desist order against Etek from committing or causing any violation or any future violations of Section 15(a)(1) of the Exchange Act.

14.     The Commission Order further ordered Etek to pay, and in its Offer of Settlement Etek agreed to pay, a civil penalty to the Securities and Exchange Commission of $50,000, within ten days of the entry of the Commission's Order, that is, by April 6, 2015.  If timely payment is not made, the Commission's Order provided that additional interest would accrue pursuant to 31 U.S.C. § 3717.

15.     No stay of the Commission Order is in effect.

16.     Etek has failed to comply with the Commission order in that he has not paid the $50,000 civil penalty, together with additional interest thereon pursuant to 31 U.S.C. § 3717.

///

## **CLAIM FOR RELIEF**

17.     Section 21(e)(1) of the Exchange Act, 15 U.S.C. 78u(e)(1) provides, in part:

> Upon application of the Commission, the district courts of the United States … shall have jurisdiction to issue writs of mandamus, injunctions, and orders commanding (1) any person to comply with the provisions of this chapter, the rules, regulations, and orders thereunder.

18.     Section 21(e) of the Exchange Act authorize the use of summary proceedings, rather than plenary civil actions, to enforce Commission orders in the district courts.  *SEC v. Vittor*, 323 F.3d 930, 935 (11th Cir. 2003); *SEC v. McCarthy*, 322 F.3d 650, 659 (9th Cir. 2003); *SEC v. Jones*, Case No. CV 13-08314 DDP (Ex); 2013 U.S. Dist. LEXIS 175328, *4 (C.D. Cal. Dec. 13, 2013) (rejecting request for change of venue given summary nature of proceeding to enforce Commission order); *SEC v. Markowski*, Case No. 8:05-CV-2205-T-27TGW, 2007 U.S. Dist. LEXIS 64551, *1 (M.D. Fla. Aug 31, 2007).

WHEREFORE, the Commission respectfully requests:

1.     Enforcement of the Commission Order;

2.     An Order requiring Etek to comply with the Commission Order by paying the $50,000 civil penalty, with additional accrued interest pursuant to 31 U.S.C. § 3717, and make such other Order as may be necessary and appropriate to enforce the Commission Order;

3.     The retention of jurisdiction as appropriate to assure and effect compliance with the orders entered herein;

///

///

///

///

///

4

1       4.      Such other and further relief and may appear just and proper.

Dated:  July 8, 2015                   Respectfully submitted,

                              */s/ Donald W. Searles*
                              DONALD W. SEARLES
                              Attorney for Plaintiff
                              Securities and Exchange Commission

# EXHIBIT A

# UNITED STATES OF AMERICA
## Before the
## SECURITIES AND EXCHANGE COMMISSION

SECURITIES EXCHANGE ACT OF 1934
Release No. 74586 / March 26, 2015

INVESTMENT COMPANY ACT OF 1940
Release No. 31537 / March 26, 2015

ADMINISTRATIVE PROCEEDING
File No. 3-16460

In the Matter of

     GLOBAL FIXED INCOME,
     LLC, CHARLES PERLITZ
     KEMPF, AGS CAPITAL
     GROUP, LLC, ALLEN
     GABRIEL SILBERSTEIN,
     BANES CAPITAL
     MANAGEMENT, LLC, JOEL
     LEIGH BANES, MICHAEL
     WARNER KOCHMAN, BIG
     STAR CAPITAL, LLC, RYAN
     PATRICK MCGUINNESS, ESSO
     VENTURES, LLC, MARK
     LEONARD LECHLER, ETEK
     INVESTMENT MANAGEMENT,
     INC., KEVIN GREGORY
     HALEY, FINMARK
     RESOURCES, LLC, PETER
     ERIC BAKER, JOSEPH
     MICHAEL ARAIZ, PARKER
     PASCHAL & COMPANY, LLC,
     ANDREW PARKER SHOOK,
     PMK CAPITAL
     MANAGEMENT, LLC, ROGER
     KUMAR, JR., RLJ FIXED
     INCOME, LLC, AND COREY
     ANTWUAN PRINTUP

Respondents.

ORDER INSTITUTING ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDINGS, PURSUANT TO  SECTIONS 15(b) AND 21C OF THE SECURITIES EXCHANGE ACT OF 1934 AND SECTION 9(b) OF THE INVESTMENT COMPANY ACT OF 1940, MAKING FINDINGS, AND IMPOSING REMEDIAL SANCTIONS AND A CEASE-AND-DESIST ORDER

## I.

The Securities and Exchange Commission ("Commission") deems it appropriate and in the public interest that public administrative and cease-and-desist proceedings be, and hereby are, instituted pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934 ("Exchange Act") and Section 9(b) of the Investment Company Act of 1940 ("Investment Company Act") against Global Fixed Income, LLC ("GFI"), Charles Perlitz Kempf ("Kempf"), AGS Capital Group, LLC ("AGS"), Allen Gabriel Silberstein ("Silberstein"), Banes Capital Management, LLC ("Banes Capital"), Joel Leigh Banes ("Joel Banes"), Michael Warner Kochman ("Kochman"), Big Star Capital, LLC ("Big Star"), Ryan Patrick McGuinness ("McGuinness"), Esso Ventures, LLC ("Esso"), Mark Leonard Lechler ("Lechler"), Etek Investment Management, Inc. ("Etek"), Kevin Gregory Haley ("Haley"), Finmark Resources, LLC ("Finmark"), Peter Eric Baker ("Baker"), Joseph Michael Araiz ("Araiz"), Parker Paschal & Company, LLC ("Parker Paschal"), Andrew Parker Shook ("Shook"), PMK Capital Management, LLC ("PMK Capital"), Roger Kumar, Jr. ("Kumar"), RLJ Fixed Income, LLC ("RLJ Fixed Income"), and Corey Antwuan Printup ("Printup") (the "Respondents").

## II.

In anticipation of the institution of these proceedings, Respondents have submitted Offers of Settlement (the "Offers") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over them and the subject matter of these proceedings, which are admitted, and except as provided herein in Section V, Respondents consent to the entry of this Order Instituting Administrative and Cease-and-Desist Proceedings, Pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934 and Section 9(b) of the Investment Company Act, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order ("Order"), as set forth below.

## III.

On the basis of this Order and Respondents' Offers, the Commission finds that:

### SUMMARY

These proceedings concern violations of the broker-dealer registration provisions of the Exchange Act by a trading firm, GFI, its principal Kempf, and 20 entities and individuals that acted as unregistered broker-dealers (the "Participants"). The Participants allowed GFI to increase its allocations in new issue corporate bonds ("New Issues"). Before each New Issue purchase, GFI transferred money to the Participants' accounts in the Participants' names but on GFI's behalf. Upon purchase of their respective allocations of the New Issues, the Participants transferred their allocations to GFI, which then sold the allocations into the secondary market, typically at a small

2

profit that was divided between GFI and the particular Participant who obtained the allocation.  As GFI's owner, Kempf received all of GFI's net profits.

Between July 2009 and June 2012 ("the Relevant Period"), GFI generally directed the Participants to purchase over $2.5 billion in New Issues on GFI's behalf.  Over the Relevant Period, the Participants also purchased over $2.3 billion in securities on the secondary market ("Secondary Trades") on behalf of GFI.  Collectively, over the three-year period, the Participants purchased approximately $4.8 billion in securities for GFI without being registered as broker-dealers.

## RESPONDENTS

1.      Global Fixed Income, LLC is a Delaware corporation with its principal place of business in Lake Bluff, Illinois.  GFI primarily buys and sells fixed income securities for its own account.  GFI has never been registered with the Commission as a broker-dealer.

2.      Charles Perlitz Kempf, age 46, has residences in Lake Forest, Illinois and England.  Kempf is GFI's sole owner, chief executive officer and president.  Kempf directs GFI's business operations.  Kempf held a Series 7 securities license and has not been associated with a registered broker-dealer since January 2007.

3.      AGS Capital Group, LLC was formed in June 2009 and is a Nevada corporation with its principal place of business in Florida.  AGS has never been registered with the Commission as a broker-dealer.

4.      Allen Gabriel Silberstein, age 40, resides in Miami, Florida.  Silberstein is AGS's 99% owner, its chief executive officer and sole employee.  Silberstein runs AGS's day-to-day operations as its only employee.  Silberstein has never been registered with the Commission as a broker-dealer, nor been an associated person of a registered broker-dealer, and does not hold any securities licenses.

5.      Banes Capital Management, LLC was formed in 2004 and is a Tennessee limited liability company with its principal place of business in Tennessee.  Although Banes Capital is an investment adviser registered with the Commission, it has never been registered with the Commission as a broker-dealer.

6.      Joel Leigh Banes, age 53, resides in Memphis, Tennessee.  Joel Banes was the chief executive officer, managing member of Banes Capital, and 100% owner of Banes Capital during the relevant time period.  Joel Banes holds Series 7, 24, 52, 63 and 65 securities licenses and is a registered representative at a broker-dealer registered with the Commission.  Joel Banes' involvement in Banes Capital's buying and selling securities on the behalf of GFI and Kempf, however, was outside the scope of his employment as a registered representative.

7.     Michael Warner Kochman, age 38, resides in Springfield, New Jersey. From October 2008 through June 2013, Kochman was an investment adviser at Banes Capital and a registered representative at a broker-dealer. Kochman holds Series 7, 63 and 65 securities licenses. As was the case with Banes, however, Kochman's involvement in the buying and selling of securities on behalf of GFI and Kempf occurred not at the registered broker-dealer, within the scope of Kochman's activities as a registered representative, but at Banes Capital.

8.     Big Star Capital, LLC was formed in 1999 in Texas and later reincorporated in Florida with its principal place of business in Florida. Big Star has never been registered with the Commission as a broker-dealer.

9.     Ryan Patrick McGuinness, age 31, resides in Tampa, Florida. McGuinness is Big Star's sole owner and runs its day-to-day operations. McGuinness has never been registered with the Commission as a broker-dealer, nor been an associated person of a registered broker-dealer, and does not hold any securities licenses.

10.     Esso Ventures, LLC was formed in 2005 and is a Delaware corporation with its principal place of business in California. Esso's primary business activity was buying and selling securities on behalf of GFI. Esso has never been registered with the Commission as a broker-dealer.

11.     Mark Leonard Lechler, age 39, resides in Pasadena, California. Lechler owns Esso and, as its managing member and sole employee, runs its day-to-day operations. Although Lechler holds Series 7 and 66 securities licenses and is a registered representative at a broker-dealer registered with the Commission, his involvement in Esso Ventures' buying and selling securities on behalf of GFI and Kempf preceded his employment as a registered representative.

12.     Etek Investment Management, Inc. was formed in 2008 and is a New Jersey corporation with its principal place of business in New Jersey. Etek has never been registered with the Commission as a broker-dealer.

13.     Kevin Gregory Haley, age 55, resides in Jenkintown, Pennsylvania. Haley owns one-third of Etek. Haley does not hold any securities licenses, and has never been registered with the Commission as a broker-dealer nor been an associated person of a registered broker-dealer.

14.     Finmark Resources, LLC was formed in 2004 and is a Delaware corporation with its principal place of business in New Jersey. Finmark has never been registered with the Commission as a broker-dealer.

15.     Peter Eric Baker, age 68, resides in New Jersey. Baker owns and operates Finmark. Baker does not hold any securities licenses, and he has never been registered with the Commission as a broker-dealer nor been an associated person of a registered broker-dealer.

4

16.     Joseph Michael Araiz, age 53, resides in New York City.  During at least 2009 through 2012, Araiz was the chief executive officer, president and chief operating officer of Further Lane Asset Management, LLC, which was registered with the Commission as an investment adviser until March 2014.  Araiz holds Series 7, 24, 63 and 66 securities licenses.  Until November 2013, Araiz also owned and operated a registered broker-dealer, Further Lane Securities, LP, which was not involved in buying and selling securities on behalf of GFI.  Araiz's involvement in Further Lane Asset Management, LLC's buying and selling securities at the direction of GFI and Kempf was outside the scope of his employment as a registered representative with Further Lane Securities, LP.

17.     Parker Paschal & Company, LLC was formed in 2009 and is a Kentucky corporation with its principal place of business in Louisville, Kentucky.  Parker Paschal has never been registered with the Commission as a broker-dealer.

18.     Andrew Parker Shook, age 45, resides in Louisville, Kentucky.  Shook owns 100% of Parker Paschal, is its sole employee, and runs its day-to-day operations.  Shook does not hold any securities licenses, has never been registered with the Commission as a broker-dealer and has not been an associated person of a registered broker-dealer since April 2004.

19.     PMK Capital Management, LLC was formed in 2004 and is a Florida corporation with its principal place of business in Florida.  PMK Capital has never been registered with the Commission as a broker-dealer.

20.     Roger Kumar, Jr., age 49, resides in Ocean Ridge, Florida.  Kumar owns 71% of PMK Capital and until May 2014 ran its day-to-day operations.  From February 2006 until the present, Kumar has been the 71% owner of PMK Securities and Research, Inc. (PMK Securities), a registered broker-dealer, which operates a wholly owned subsidiary, PMK Capital Advisors, Inc. (PMK Advisors), an investment adviser registered with the Commission.  PMK Securities and PMK Advisors were not involved in buying and selling bonds with GFI.  Kumar's involvement in PMK Capital's buying and selling securities at the direction of GFI and Kempf was outside the scope of his employment as a registered representative with PMK Securities.  In approximately May 2014, Kumar ceased his day-to-day involvement with PMK Securities.  Kumar holds Series 7, 63 and 65 securities licenses.

21.     RLJ Fixed Income, LLC was formed in 2011 and is a Delaware corporation with its principal place of business in Bethesda, Maryland.  RLJ's majority owner is The RLJ Companies, LLC.  RLJ has never been registered with the Commission as a broker-dealer.

22.     Corey Antwuan Printup, age 33, resides in Maryland.  Since 2012, Printup has been responsible for RLJ's day-to-day operations and is employed as a vice president at The RLJ Companies, LLC.  Printup does not currently hold any securities licenses, has never been registered with the Commission as a broker-dealer and has not been an associated person of a registered broker-dealer since July 2006.

## OTHER RELEVANT ENTITY

23.     Further Lane Asset Management, LLC was formed in 1997 and is a New York corporation with its principal place of business in New York.  Further Lane was an investment adviser registered with the Commission from 2000 to March 31, 2014, but it has never been registered with the Commission as a broker-dealer.  Araiz bought and sold securities on behalf of GFI through Further Lane.

## BACKGROUND

### GFI's Background and Trading Strategy

24.     Kempf formed GFI in 2004 and is GFI's sole owner, president and primary decision maker.  During the Relevant Period, GFI had five employees, including Kempf, and primarily bought and sold fixed income securities, focusing on corporate securities; however, GFI also bought and sold agency securities (e.g., Fannie Mae and Freddie Mac bonds) and sold government securities as a hedge against interest rate risk.  GFI primarily purchased investment grade corporate New Issues.  In part, because the New Issues are often oversubscribed, GFI was generally able to sell or "flip" the bonds within a few days for a small profit as compared to the dollar value of the trade.

### GFI's Relationships with the Participants

25.     Beginning in February 2008, in an attempt to further increase GFI's profitability, GFI and Kempf solicited the Participants to purchase bonds for GFI.  In part, GFI used the Participants to increase GFI's allocation in oversubscribed New Issues.

26.     Generally, GFI located Participants through word of mouth or through Participants that were compensating others as "finders."  Kempf provided some of the Participants with a PowerPoint presentation to market GFI.  This presentation described GFI's history, business, investment strategy and profitability.  If interested, the Participant met with Kempf to discuss a formal business relationship with GFI.  Once the Participant agreed to act as GFI's agent, the Participant created a corporation, if one did not already exist, and all but one entered into a written agreement with GFI (a "Participant Agreement" or "Profit Splitting Agreement") to purchase securities on GFI's behalf.  The Participant Agreement or Profit Splitting Agreement (depending on which was used) was signed by Kempf and the Participant's control person.  Among other things, the Participant Agreement set forth: (1) the Participant's compensation, generally a splitting of the monthly trading profits with GFI ranging between 10% and 50%; (2) that GFI provided all of the capital for the Participant's trading; and (3) that GFI generally assumed all trading losses.  In addition, many of the Participants executed an additional agreement (a "Guaranty of Payment") in which GFI: (1) agreed to pay for all securities; and (2) represented that the Participant did not have to register as a broker or dealer.

6

**GFI's and Kempf's Direction of the Participants' Trading Activity**

27.     After each Participant signed up with GFI, GFI often directed the Participant's trading activity related to the New Issues.  For example, GFI often directed the Participant to open accounts at specific underwriters and provided the Participant with the name and telephone number of a salesperson or contact person at each underwriter.  The Participant opened delivery versus payment ("DVP") accounts at the underwriters.  A DVP account requires payment when the securities are delivered, meaning that the account maintains no cash or other securities unlike a traditional brokerage account.  At trade settlement, GFI directed its clearing firm to transfer money to pay for the trade.  After settlement, the Participant, at GFI's direction, instructed the underwriter to immediately transfer the securities to GFI's account at GFI's clearing firm.

**GFI's Compensation of the Participants**

28.     Once GFI obtained the New Issues from the Participants, GFI sold the bonds, usually at a profit.  Shortly after each month ended, GFI provided each of the Participants with a monthly profit and loss statement reflecting the results from the previous month's trades.  GFI paid the Participants their share of the profits based upon the agreed split set forth in the Participant Agreement or Profit Splitting Agreement, net of any losses GFI incurred on any unprofitable trades.  As indicated in the table below, between 2009 and 2012, the Participants received the following payout ratios and compensation from GFI:

| Participant | Payout Ratio | 2009-2012 Compensation |
|---|---|---|
| PMK Capital Management | 50% | $4,076,281.36 |
| Finmark | 20% | $1,073,982.56 |
| Esso | 50% | $1,051,432.56 |
| Further Lane Asset Management, LLC | 50% | $726,558.28 |
| Banes Capital | 45% | $662,780.40 |
| RLJ | 20%-35% | $465,359.92 |
| Etek | 20% | $447,475.64 |
| AGS | 45% | $446,223.16 |
| Big Star | 15% | $415,890.08 |
| Parker Paschal | 35% | $377,974.48 |
| | | |
| **Total** | | **$9,743,958.44** |

In sum, GFI paid the Participants approximately $9.7 million in transaction-based compensation.

**The Participants' Roles**

29.     The Participants played an essential role in GFI's profitability by providing additional New Issues allocations to GFI as well as Secondary Trades as described in the paragraphs that follow.  The Participants purchased approximately $4.8 billion in New Issues and Secondary Trades on behalf of GFI as indicated in the table below (listed in order of dollar amount purchased for GFI):

| July 1, 2009 through June 30, 2012 | | | | | | |
|---|---|---|---|---|---|---|
| Total Amount of Purchases by  Participant | | | | Total Number of Transactions by  Participant | | |
| Participant | New Issues | Secondary Trades | Total New Issues + Secondary Trades | New Issues | Secondary Trades | Total New Issues + Secondary Trades |
| PMK Capital | $1.2 billion | $657 million | $1.9 billion | 724 | 254 | 978 |
| Banes Capital | $440 million | $436 million | $876 million | 276 | 183 | 459 |
| Finmark | $24 million | $553 million | $577 million | 12 | 61 | 73 |
| AGS | $191 million | $199 million | $390 million | 115 | 81 | 196 |
| Further Lane | $216 million | $134 million | $350 million | 170 | 87 | 257 |
| Etek | $94 million | $181 million | $275 million | 62 | 93 | 155 |
| Parker Paschal | $77 million | $132 million | $209 million | 59 | 72 | 131 |
| RLJ | $154 million | 0 | $154 million | 119 | 0 | 119 |
| Big Star | $106 million | 0 | $106 million | 137 | 0 | 137 |
| Esso | $14 million | $50 million | $64 million | 9 | 18 | 27 |
| **Total** | **$2.5 billion** | **$2.3 billion** | **$4.8 billion** | **1683** | **849** | **2532** |

30.     In 2007, Kumar, the majority owner of PMK Capital, met with Kempf about purchasing securities on behalf of GFI.  Kumar understood that PMK Capital could increase GFI's allocation in New Issues.  On April 17, 2008, PMK Capital entered into a Profit Splitting Agreement, signed by Kempf and Kumar on behalf of GFI and PMK Capital, respectively, where PMK agreed to buy New Issues for GFI and trading profits were split 50/50 between GFI and PMK Capital.  Kempf and another GFI employee directed PMK's New Issues purchases.

31.     In 2009, Kochman, a registered investment adviser at Banes Capital, and Joel Banes met with Kempf about Banes Capital purchasing securities on behalf of GFI.  Joel Banes understood that Banes Capital could increase GFI's allocation in New Issues.  Joel Banes received and signed a Participant Agreement and Guarantee of Payment.  Under the Participant Agreement,

8

trading profits were split 45/55 between Banes Capital and GFI, respectively. Kochman was paid 40% of the amount GFI paid Banes Capital. Kochman executed all the trades by Banes Capital on behalf of GFI. At times, Kempf directed Banes Capital on what purchases to make for GFI, generally through email, and the majority of the purchases were New Issues.

32.     In 2008, Baker, the owner of Finmark, communicated with Kempf about purchasing securities on behalf of GFI. On February 28, 2008, Finmark and GFI executed a Profit Splitting Agreement and Guaranty of Payment, which was signed by Baker and Kempf. Under the Profit Splitting Agreement, the profits were split 20/80 between Finmark and GFI, respectively. Generally, GFI emailed instructions to Finmark on which New Issues to purchase.

33.     In 2009, Silberstein, the owner of AGS, met with Kempf about purchasing securities on behalf of GFI. On July 23, 2009, GFI and AGS entered into a Participant Agreement, which was signed by Kempf and Silberstein, respectively. Under the Profit Splitting Agreement, the profits were split 45/55 between AGS and GFI, respectively. Generally, GFI directed AGS's New Issues purchases through emails.

34.     In 2007, Araiz, the chief executive officer, president, and chief operating officer of registered investment adviser Further Lane, met with Kempf about purchasing securities on behalf of GFI. In June 2009, Kempf and Araiz signed a Participation Agreement under which the profits were split 50/50 between GFI and Further Lane. Generally, GFI directed Further Lane's trading in oversubscribed New Issues through emails.

35.     In 2008, Haley met with Kempf about purchasing securities on behalf of GFI. Haley formed Etek to trade securities for GFI. In June 2008, Etek and GFI executed a Profit Splitting Agreement and Guarantee of Payment Agreement. Under the Profit Splitting Agreement, Etek and GFI split the trading profits 20/80, respectively.

36.     In late 2008, Shook, the owner of Parker Paschal, met with Kempf about purchasing securities on behalf of GFI. Shortly thereafter, Shook and Kempf signed the Guaranty of Payment Agreement and Profit Splitting Agreement, under which GFI agreed to pay Parker Paschal 35% of any trading profits. At times, Kempf directed Shook's trading on behalf of GFI.

37.     In May 2011, RLJ Fixed Income was formed by the RLJ Companies to purchase securities on behalf of GFI. RLJ Fixed Income and GFI executed a Participant Agreement, under which RLJ Fixed Income received $500 for every $1 million in purchases for GFI. In January 2012, when Printup was given day-to-day responsibility for RLJ Fixed Income, he expanded the business relationship with GFI. Printup also renegotiated RLJ Fixed Income's compensation under the Participant Agreement so that RLJ Fixed Income received 20%-35% of trading profits. Printup closed RLJ Fixed Income's existing DVP accounts, opened new DVP brokerage accounts with salespeople he was familiar with, and he increased the trading activity on behalf of GFI. Generally, Printup received purchase instructions from Kempf and GFI regarding New Issues.

38.     In 2009, McGuinness met with Kempf about purchasing securities on behalf of GFI.  Subsequently, in 2009, McGuinness formed Big Star to purchase securities on behalf of GFI. In September 2009, GFI and Big Star executed a Participant Agreement, which was signed by Kempf and McGuinness.  Under the Participant Agreement, GFI agreed to pay Big Star 15% of any trading profits.  Generally, GFI directed Big Star's trading.

39.     In 2005, Lechler formed Esso.  In 2008, Lechler agreed to purchase bonds on behalf of GFI without a written agreement and received 50% of the trading profits.  Generally, GFI directed Lechler's trading activity through emails.  In addition, Lechler recruited other Participants (i.e., acted as a finder) to purchase securities for GFI and was paid by GFI for the trading related to the referrals.  The payment amount was either a percentage of the Participant's monthly profits (i.e., an override commission) or a flat rate.

40.     As demonstrated by the conduct described above, the Participants regularly participated in securities transactions for GFI and received transaction-based compensation from GFI for this activity.  However, the Participants were not registered as broker-dealers with the Commission while engaged in this activity.

41.     As a result of the conduct described above, the Participants committed violations of Section 15(a)(1) of the Exchange Act, which makes it unlawful for any broker or dealer to use the mails or any other means of interstate commerce to "effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security" unless that broker or dealer is registered with the Commission in accordance with Section 15(b) of the Exchange Act.

42.     As a result of the conduct described above, GFI and Kempf caused, and Kempf willfully[1] aided and abetted, violations of Section 15(a)(1) of the Exchange Act, which makes it unlawful for any broker or dealer to use the mails or any other means of interstate commerce to "effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security" unless that broker or dealer is registered with the Commission in accordance with Section 15(b) of the Exchange Act.

## IV.

In view of the foregoing, the Commission deems it appropriate and in the public interest to impose the sanctions agreed to in Respondents' Offers.

---

[1] A willful violation of the securities laws means merely "'that the person charged with the duty knows what he is doing.'"  *Wonsover v. SEC*, 205 F.3d 408, 414 (D.C. Cir. 2000) (quoting *Hughes v. SEC*, 174 F.2d 969, 977 (D.C. Cir. 1949)).  There is no requirement that the actor "'also be aware that he is violating one of the Rules or Acts.'"  *Id.* (quoting *Gearhart & Otis, Inc. v. SEC*, 348 F.2d 798, 803 (D.C. Cir. 1965)).

Exhibit A Page 15

Accordingly, pursuant to Sections 15(b) and 21C of the Exchange Act and Section 9(b) of the Investment Company Act, it is hereby ORDERED that:

A.      Respondents GFI, Kempf, AGS, Silberstein, Banes Capital, Joel Banes, Kochman, Big Star, McGuinness, Esso, Lechler, Etek, Haley, Finmark, Baker, Araiz, Parker Paschal, Shook, PMK Capital, Kumar, RLJ Fixed Income, and Printup cease and desist from committing or causing any violations and any future violations of Section 15(a)(1) of the Exchange Act.

B.      Respondent Kempf be, and hereby is, suspended for a period of twelve months effective on the second Monday following the entry of this Order from association with any broker or dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization; prohibited from serving or acting as an employee, officer, director, member of an advisory board, investment adviser or depositor of, or principal underwriter for, a registered investment company or affiliated person of such investment adviser, depositor, or principal underwriter; and barred from participating in any offering of a penny stock, including: acting as a promoter, finder, consultant, agent or other person who engages in activities with a broker, dealer or issuer for purposes of the issuance or trading in any penny stock, or inducing or attempting to induce the purchase or sale of any penny stock.

C.      Within ten days of the entry of this Order, Respondents GFI and Kempf are jointly and severally liable to pay disgorgement of $1,467,113.04 and within 120 days of the entry of this Order an additional $968,876.57 (for a total disgorgement amount of $2,435,989.61), and, within ten days of the entry of this Order, the Respondents below are jointly and severally liable with GFI and Kempf to pay disgorgement to the Securities and Exchange Commission as follows:

(a)      $111,555.79 for Respondents AGS and Silberstein;
(b)      $165,695.10 for Respondents Banes Capital, Joel Banes and Kochman;
(c)      $103,972.52 for Respondents Big Star and McGuinness;
(d)      $262,858.14 for Respondents Esso and Lechler;
(e)      $111,868.91 for Respondents Etek and Haley;
(f)      $268,495.64 for Respondents Finmark and Baker;
(g)      $181,639.57 for Respondent Araiz;
(h)      $94,493.62 for Respondents Parker Paschal and Shook;
(i)      $1,019,070.34 for Respondents PMK Capital and Kumar; and
(j)      $116,339.98 for Respondents RLJ Fixed Income and Printup.

If timely payment is not made, additional interest shall accrue pursuant to SEC Rule of Practice 600.  Payment must be made in one of the following ways:

(1)      Respondents may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

(2)     Respondents may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

(3)     Respondents may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

Enterprise Services Center
Accounts Receivable Branch
HQ Bldg., Room 181, AMZ-341
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying Respondents GFI, Kempf, AGS, Silberstein, Banes Capital, Joel Banes, Kochman, Big Star, McGuinness, Esso, Lechler, Etek, Haley, Finmark, Baker, Araiz, Parker Paschal, Shook, PMK Capital, Kumar, RLJ Fixed Income, and/or Printup as Respondents in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to Ms. Lorraine B. Echavarria, Associate Regional Director, Division of Enforcement, Securities and Exchange Commission, 444 Flower Street, Ste. 900, Los Angeles, CA 90071.

D.      The Respondents shall, within 10 days of the entry of this Order, pay the civil money penalties indicated below to the Securities and Exchange Commission:

(a)     $500,000 for Respondent GFI;
(b)     $50,000 for Respondent AGS;
(c)     $5,000 for Respondent Silberstein;
(d)     $50,000 for Respondent Banes Capital;
(e)     $5,000 for Respondent Joel Banes;
(f)     $5,000 for Respondent Kochman;
(g)     $50,000 for Respondent Big Star;
(h)     $5,000 for Respondent McGuinness;
(i)     $50,000 for Respondent Esso;
(j)     $5,000 for Respondent Lechler;
(k)     $50,000 for Respondent Etek;
(l)     $5,000 for Respondent Haley;
(m)     $50,000 for Respondent Finmark;
(n)     $5,000 for Respondent Baker;
(o)     $5,000 for Respondent Araiz;
(p)     $50,000 for Respondent Parker Paschal;
(q)     $5,000 for Respondent Shook;
(r)     $50,000 for Respondent PMK Capital;
(s)     $5,000 for Respondent Kumar;

(t)     $50,000 for Respondent RLJ Fixed Income; and

(u)     $5,000 for Respondent Printup.

Payment shall be made in the following 12 installments for Respondent Baker for a total of $5,000: (1) within 10 days after the entry of this Order, Respondent Baker shall pay $417; (2) on the first day of the following 10 months after the entry of this Order, Respondent Baker shall pay $417; and (3) on the first day of the 11th month following the entry of this Order, Respondent Baker shall make a final payment of $413.

If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. § 3717. Payment must be made in one of the following ways:

(1)     Respondents may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

(2)     Respondents may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

(3)     Respondents may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

Enterprise Services Center
Accounts Receivable Branch
HQ Bldg., Room 181, AMZ-341
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying Respondents GFI, AGS, Silberstein, Banes Capital, Joel Banes, Kochman, Big Star, McGuinness, Esso, Lechler, Etek, Haley, Finmark, Baker, Araiz, Parker Paschal, Shook, PMK Capital, Kumar, RLJ Fixed Income, and/or Printup as Respondents in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to Ms. Lorraine B. Echavarria, Associate Regional Director, Division of Enforcement, Securities and Exchange Commission, 444 Flower Street, Ste. 900, Los Angeles, CA 90071.

## V.

It is further Ordered that, solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, the findings in this Order are true and admitted by Respondents, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Respondents under this Order or any other judgment, order,

Exhibit A Page 18

consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Respondents of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. §523(a)(19).

By the Commission.

Brent J. Fields
Secretary

14

# EXHIBIT B

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

ADMINISTRATIVE PROCEEDING
File No.

| | |
|---|---|
| **In the Matter of**<br><br>GLOBAL FIXED INCOME, LLC, CHARLES PERLITZ KEMPF, AGS CAPITAL GROUP, LLC, ALLEN GABRIEL SILBERSTEIN, BANES CAPITAL MANAGEMENT, LLC, JOEL LEIGH BANES, MICHAEL WARNER KOCHMAN, BIG STAR CAPITAL, LLC, RYAN PATRICK MCGUINNESS, ESSO VENTURES, LLC, MARK LEONARD LECHLER, ETEK INVESTMENT MANAGEMENT, INC., KEVIN GREGORY HALEY, FINMARK RESOURCES, LLC, PETER ERIC BAKER, JOSEPH MICHAEL ARAIZ, PARKER PASCHAL & COMPANY, LLC, ANDREW PARKER SHOOK, PMK CAPITAL MANAGEMENT, LLC, ROGER KUMAR, JR., RLJ FIXED INCOME, LLC, AND COREY ANTWUAN PRINTUP<br><br>**Respondents.** | **OFFER OF SETTLEMENT OF ETEK INVESTMENT MANAGEMENT, INC.** |

I.

Etek Investment Management, Inc. ("Etek" or "Respondent"), pursuant to Rule 240(a) of the Rules of Practice of the Securities and Exchange Commission ("Commission") [17 C.F.R. § 201.240(a)] submits this Offer of Settlement ("Offer") in anticipation of public administrative and cease-and-desist proceedings to be instituted against it by the Commission, pursuant to Sections

15(b) and 21C of the Securities Exchange Act of 1934 ("Exchange Act") and Section 9(b) of the Investment Company Act of 1940.

## II.

This Offer is submitted solely for the purpose of settling these proceedings, with the express understanding that it will not be used in any way in these or any other proceedings, unless the Offer is accepted by the Commission. If the Offer is not accepted by the Commission, the Offer is withdrawn without prejudice to Respondent and shall not become a part of the record in these or any other proceedings, except for the waiver expressed in Section V. with respect to Rule 240(c)(5) of the Commission's Rules of Practice [17 C.F.R. § 201.240(c)(5)].

## III.

Consistent with the provisions of 17 C.F.R. § 202.5(f), Respondent waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein.

## IV.

Respondent hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Respondent to defend against this action. For these purposes, Respondent agrees that Respondent is not the prevailing party in this action since the parties have reached a good faith settlement.

## V.

By submitting this Offer, Respondent hereby acknowledges its waiver of those rights specified in Rules 240(c)(4) and (5) [17 C.F.R. §201.240(c)(4) and (5)] of the Commission's Rules of Practice. Respondent also hereby waives service of the Order.

## VI.

Respondent hereby:

A. Admits the jurisdiction of the Commission over it and over the matters set forth in the Order Instituting Administrative and Cease-and-Desist Proceedings, Pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934 and Section 9(b) of the Investment Company Act of 1940, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order ("Order"), which is attached;

2

B. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission or in which the Commission is a party, prior to a hearing pursuant to the Commission's Rules of Practice, 17 C.F.R. § 201.100 et seq., and without admitting or denying the findings contained in the Order, except as to the Commission's jurisdiction over it and the subject matter of these proceedings, which are admitted, consents to the entry of the Order, in which the Commission:

    (1)    finds that Respondent violated Section 15(a)(1) of the Exchange Act;

    (2)    orders that Respondent cease and desist from committing or causing any violations and any future violations of Section 15(a)(1) of the Exchange Act;

    (3)    orders that Respondent, within 10 days of the entry of this Order, pay the disgorgement of $111,868.91, for which it is jointly and severally liable as indicated in Section IV.C. of the Order, all of which disgorgement will be paid to the Securities and Exchange Commission for transfer to the general fund of the United States Treasury in accordance with Exchange Act Section 21F(g)(3). If timely payment is not made, additional interest shall accrue pursuant to SEC Rule of Practice 600. Payment must be made in one of the following ways:

    (a)    Respondent may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

    (b)    Respondent may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

    (c)    Respondent may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

Enterprise Services Center
Accounts Receivable Branch
HQ Bldg., Room 181, AMZ-341
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying Etek as a Respondent in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to Ms. Lorraine B. Echavarria, Associate Regional Director, Division of Enforcement, Securities and Exchange Commission, 444 Flower Street, Suite 900, Los Angeles, CA 90071.

(4)     orders that Respondent shall, within 10 days of the entry of this Order, pay a civil money penalty in the amount of $50,000 to the Securities and Exchange Commission for transfer to the general fund of the United States Treasury in accordance with Exchange Act Section 21F(g)(3). If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. 3717. Payment must be made in one of the following ways:

(a)     Respondent may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

(b)     Respondent may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

(c)     Respondent may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

Enterprise Services Center
Accounts Receivable Branch
HQ Bldg., Room 181, AMZ-341
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying Etek as a Respondent in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to Ms. Lorraine B. Echavarria, Associate Regional Director, Division of Enforcement, Securities and Exchange Commission, 444 Flower Street, Suite 900, Los Angeles, CA 90071.

**VII.**

Respondent understands and agrees to comply with the terms of 17 C.F.R § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings," and "a refusal to admit the allegations is equivalent to a denial, unless the defendant or respondent states that he neither admits nor denies the allegations." As part of Respondent's agreement to comply with the terms of Section 202.5(e), Respondent: (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any finding in the Order or creating the impression that the Order is without factual basis; (ii) will not make or permit to be made any public statement to the effect that Respondent does not admit the findings of the Order, or that the Offer contains no admission of the findings, without also stating that the Respondent does not deny the findings; and (iii) upon the filing of this Offer of Settlement, Respondent hereby withdraws any papers

4

previously filed in this proceeding to the extent that they deny, directly or indirectly, any finding in the Order. If Respondent breaches this agreement, the Division of Enforcement may petition the Commission to vacate the Order and restore this proceeding to its active docket. Nothing in this provision affects Respondent's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

## VIII.

Respondent agrees that it shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source including, but not limited to, payment made pursuant to any insurance policy, with regard to any penalty amounts that Respondent shall pay pursuant to this Order, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors. Respondent further agrees that it shall not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state or local tax for any penalty amounts that Respondent shall pay pursuant to this Order, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors.

## IX.

Respondent states that it has read and understands the foregoing Offer, that this Offer is made voluntarily, and that no promises, offers, threats, or inducements of any kind or nature whatsoever have been made by the Commission or any member, officer, employee, agent, or representative of the Commission in consideration of this Offer or otherwise to induce it to submit to this Offer.

4ᵗʰ Day of February 2015

_____
Kevin Gregory Haley
Owner of Etek Investment Management, LLC

**COMMONWEALTH OF PENNSYLVANIA**                    }
                                                    } SS:
**COUNTY OF MONTGOMERY**                            }

The foregoing instrument was acknowledged before me this 4th day of February, 2015, by KEVIN GREGORY HALEY, who ___ is personally known to me or ✓ who has produced a __PA__ driver's license as identification and who did take an oath.

_____
Notary Public
Commonwealth of Pennsylvania

Commission Number              :

Commission Expiration          : OCT 24, 2018

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Vivian Hunter, Notary Public
Jenkintown Boro, Montgomery County
My Commission Expires Oct. 24, 2018
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

5

Exhibit B Page 24

CERTIFICATE OF CORPORATE RESOLUTION

I, Kevin Gregory Haley do hereby certify that I am the duly elected, qualified and acting Secretary of Etek Investment Management, Inc. ("EIM"), a Delaware corporation, and that the following is a complete and accurate copy of a resolution adopted by the Board of Directors of EIM at a meeting held on January 28, 2015, at which a quorum was present and resolved as follows:

**RESOLVED:** That Kevin Gregory Haley, an Officer of this Corporation, be and hereby is authorized to act on behalf of the Corporation, and in his sole discretion, to negotiate, approve, and make the offer of settlement of Etek Investment Management, Inc., attached hereto, to the United States Securities and Exchange Commission ("Commission") in connection with the investigation conducted by the Commission; in this connection, the aforementioned Officer be and hereby is authorized to undertake such actions as he may deem necessary and advisable, including the execution of such documentation as may be required by the Commission, in order to carry out the foregoing. I further certify that the aforesaid resolution has not been amended or revoked in any respect and remains in full force and effect.

IN WITNESS WHEREOF, I have executed this Certificate as a sealed instrument this 4th Day of February, 2015.

By:

Kevin Gregory Haley
Secretary
Etek Investment Management, Inc.

Notary Public

Commonwealth of Pennsylvania

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Vivian Hunter, Notary Public
Jenkintown Boro, Montgomery County
My Commission Expires Oct. 24, 2018
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

Commission Number :

Commission Expiration : OCT 24, 2018

6

Exhibit B Page 25